UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**MARK FULTZ**,

    Plaintiff,

v.

**FORD MOTOR COMPANY**, a Delaware for-profit corporation

And

**FORD MOTOR LAND DEVELOPMENT CORPORATION**, a Delaware for-profit corporation

    Defendants.

Case No. 2:22-cv-12068

Judge:

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, Mark Fultz, individually, by and through the undersigned counsel, Owen B. Dunn, Jr., hereby files this Complaint against the Defendants, FORD MOTOR COMPANY, a Delaware for-profit corporation and FORD MOTOR LAND DEVELOPMENT CORPORATION, a Delaware for-profit corporation for injunctive relief, damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging as follows:

## JURISDICTION AND VENUE

1. This action is brought by the Plaintiff, Mark Fultz, individually, and on behalf of individuals similarly situated, pursuant to the enforcement provision of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12188(a), against the Defendant as delineated herein.

2. The Court has jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, which governs actions that arise from the Defendant's violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; 28 U.S.C. § 1331, which gives the District Courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; 28 U.S.C. § 1343(3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government; and 28 U.S.C. § 1367, as Count II utilizes the same core of operative facts as Count I, and is therefore subject to supplemental jurisdiction.

3. Venue is proper in the Eastern District of Michigan as venue lies in the judicial district of the property *situs*. The Defendant's property and operations complained of by Plaintiff are located in this judicial district, where the business of public accommodation is conducted, including the acts complained of herein.

**PARTIES**

4. Plaintiff, Mark Fultz ("Plaintiff" or "Mr. Fultz"), is a Florida resident, is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

5. Ford Motor Company and Ford Motor Land Development Corporation jointly own or operate a place of public accommodation, a hotel known as The Dearborn Inn, A Marriott Hotel, that is located at 20301 Oakwood Blvd, Dearborn, MI 48124-4058 in Wayne County. Plaintiff has patronized and has been a guest at Defendants' hotel located therein as a place(s) of public accommodation.

6. Upon information and belief, the hotel owned and operated by the Defendants is non-compliant with the remedial provisions of the ADA. As Defendants own, leases, leases

to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, Defendants are responsible for complying with the obligations of the ADA. Defendants' facility is a hotel, which constitutes a place of public accommodation, and fails to comply with the ADA and its regulations, as also described further herein.

7. Mr. Fultz is an individual who, as a result of a stroke, is paralyzed on the right side of his body. He uses a manual wheelchair and motorized scooter for mobility and can occasionally walk short distances with the use of a cane.

8. Raised in Michigan, Mr. Fultz has relatives including his son, daughter, grandchildren, and cousins in suburban Detroit. Plaintiff frequents many establishments in the Wayne County region and has been a customer at the property that forms the basis of this lawsuit on multiple occasions.

9. Mr. Fultz patronized the Defendants' hotel while in town to visit with his grandchildren and to participate in a group family vacation they took to northern Michigan. While staying as an overnight guest on June 22, 2022 at Defendants' place of public accommodation Mr. Fultz encountered architectural barriers at the subject property that violate the ADA and its regulations. These barriers to access have endangered his safety and protected access to Defendant's place of public accommodation.

10. Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access,

or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.

11. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained in this complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to visit the Defendants' place of business again on future occasions, not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the hotel and its amenities without fear of discrimination.

12. The Defendants have discriminated against the Mark Fultz by denying him access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq*.

13. The Defendant have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

14. A preliminary inspection of the hotel owned by the Defendants has shown that many violations of the ADA exist, whose remedy is readily achievable. These violations include, but are not limited to:

**Parking**

A. In the parking lot, the failure to maintain the accessible features of the designated accessible parking stalls is a violation of the ADA 2010 Compliance Standards and 1991 ADAAG Compliance Standards whose remedy is readily achievable.

B. In the parking lot, there are missing designated accessible parking signs, in violation of the ADA section 502.6 of the 2010 Standards and 1991 ADAS Section 4.6.4 whose remedy is readily achievable.

C. In the parking lot, the van stall is missing a sign identifying it as a van accessible stall, in violation of the ADA section 502.6 of the 2010 Standards and 1991 ADAAG section 4.6.4 whose remedy is readily achievable.

D. In a parking lot, not all accessible parking spaces connect to an accessible route, in violation of the ADA section 502.3 of the 2010 Standards and 1991 ADAAG section 4.6.3 whose remedy is readily achievable.

**Accessible Routes**

E. Ground surfaces located on the accessible route have cracks in excess of ½ inch and changes in level in excess of ¼ inch, in violation of the ADA and section 302.3 of the 2010 Standards and 1991 ADAAG section 4.5.4 whose remedy is readily achievable.

F. Ground surfaces located on the accessible route have changes in elevation in excess of ¼ inch, in violation of the ADA and section 303.2 of the 2010 Standards and 1991 ADAAG section 4.5.2 whose remedy is readily achievable.

G. At the entrance(s), the floor mat at the door is not secured in place, in violation of the ADA section 302.2 of the 2010 Standards and 1991 ADAAG section 4.5.3 whose remedy is readily achievable.

H. Defendants do not provide that 50% of the facility public entrances are compliant per section 4.1.3(8) of the 1991 ADAAG or 60% are compliant per 2010 Standard sections 206.2.1 and 206.4.1.

I. Where multiple public entrances are serving different site arrival points, an accessible route is not provided, in violation of the ADA section 206.2.1 of the 2010 Standards and 1991 ADAAG section 4.1.2(1) whose remedy is readily achievable.

J. Exterior Door leading to garden, the floor mat at the door is not secured in place, in violation of the ADA section 302.2 of the 2010 Standards and 1991 ADAAG section 4.5.3 whose remedy is readily achievable.

Access to Goods and Services

K. At the front desk, the transaction counter is too high, in violation of the ADA section 904 of the 2010 Standards and 1991 ADAAG section 7.2 whose remedy is readily achievable.

Public Restroom

L. Public Men's restroom entry, the sign providing information is located out of compliance, as well as is missing the International Symbol of Accessibility (ISA) in violation of the ADA section 703.4.2 of the 2010 Standards and 1991 AGAAG section 4.30.6 whose remedy is readily achievable.

M. Public Men's restroom exit, the maneuvering space on the pull side of the door does not adequately extend beyond the latch side of the door, in violation of the ADA section 404.2.4.1 of the 2010 Standards and 1991 ADAAG section 4.13.6.

N. Public Men's restroom, the water and drainpipes under the lavatory are not adequately insulated to protect against scalding and contact in violation of the ADA section 606.5 of the 2010 Standards and 1991 ADAAG section 4.19.4 whose remedy is readily achievable.

O. Public Men's restroom, the accessible the accessible toilet compartment is out of compliance, is missing grab bars and does not provide required clear floor space for a wheelchair user in violation of the ADA whose remedy is readily achievable.

P. Public Men's restroom, the clear floor space of the accessible urinal is impeded, in violation of the ADA section 605 of the 2010 Standards and 1991 ADAAG section 4.18.3 whose remedy is readily achievable.

**Alternate Lobby Restrooms**

Q. At the Men's public restroom (Lobby area) entry, the sign providing information is located out of compliance, in violation of the ADA section 703.4.2 of the 2010 Standards and 1991 AGAAG section 4.30.6 whose remedy is readily achievable.

R. At the Men's public restroom exit, the maneuvering space on the pull side of the door does not adequately extend beyond the latch side of the door, in violation of the ADA section 404.2.4.1 of the 2010 Standards and 1991 ADAAG section 4.13.6.

S. At the Women's public restroom (Lobby area) entry, the sign providing information is located out of compliance, as well as is missing the International Symbol of Accessibility (ISA) in violation of the ADA section 703.4.2 of the 2010 Standards and 1991 AGAAG section 4.30.6 whose remedy is readily achievable.

T. In the Men's public restroom, the water and drainpipes under the lavatory are not adequately insulated in violation of the ADA section 606.5 of the 2010 Standards and 1991 ADAAG section 4.19.4 whose remedy is readily achievable.

U. In the Men's public restroom, the accessible toilet compartment is out of compliance, is missing grab bars and does not provide required clear floor space for a wheelchair in violation of the ADA whose remedy is readily achievable.

V. In the Men's public restroom, the side grab bar in the water closet is obstructed, in violation of the ADA section 609.3 of the 2010 Standards and 1991 ADAAG section 4.26.2 whose remedy is readily achievable.

**Pool**

W. In the pool/spa area, the spa does not have at least one accessible means of entry, in violation of the ADA section 242.4 of the 2010 Standards.

**Fitness Center**

X.  In the Fitness Center, the door exceeds the maximum allowable opening force, in violation of the ADA and section 404.2.9 of the 2010 Standards and 1991 ADAAG section 4.13.11 whose remedy is readily achievable.

Z.  In the Fitness Center, the route of travel does not provide a minimum width of 36 inches, in violation of the ADA section 403.5.1 of the 2010 Standards and 1991 ADAAG section 4.3.3 whose remedy is readily achievable.

AA. In the Fitness Center the exercise machines and equipment do not have a clear floor space complying with 305 positioned for transfer or for use by an individual seated in a wheelchair, in violation of the ADA section 1004.1 of the 2010 Standards whose remedy is readily achievable.

**Ten Eyck Tavern**

BB. In the bar area, there are no accessible seating or standing dining surfaces provided, in violation of the ADA section 226.1 of the 2010 Standards and 1991 ADAAG section 5.1 whose remedy is readily achievable.

**Designated Mobility Accessible Guest Room #157**

CC. In guest room #157, the door exceeds the maximum allowable opening force, in violation of the ADA and section 404.2.9 of the 2010 Standards and 1991 ADAAG section 4.13.11 whose remedy is readily achievable.

DD. In guest room #157, there is not the required clear floor space around the toilet due to a superfluous non-load bearing wall, in violation of the ADA section 604.3.1 of the 2010 Standards and 1991 ADAAG section 4.71.3 whose remedy is readily achievable.

EE. In guest room #157, the seat height of the water closet (toilet) is too low, in violation of the ADA section 604.4 of the 2010 Standards and 1991 ADAAG section 4.16.3 whose remedy is readily achievable.

FF. In guest room #157, the side grab bar does not extend far enough from the rear wall, in violation of the ADA section 604.5.1 of the 2010 Standards and 1991 ADAAG section4.17.6 whose remedy is readily achievable.

GG. In guest room #157, the flush handle is not located on the open side of the toilet, in violation of the ADA section 604.6 of the 2010 Standards whose remedy is readily achievable.

HH. In guest room #157, in the Roll-In Shower the grab bars are out of compliance and missing, in violation of the ADA section 608.3.2 of the 2010 Standards whose remedy is readily achievable.

II. In guest room #157, in the Roll-In Shower, the controls, faucet and shower sprayer are out not located on the back wall adjacent the fixed shower seat, in violation of the ADA section 608.5 of the 2010 Standards whose remedy is readily achievable.

JJ. In guest room #157, items and amenities in the closet are too high and out of the maximum reach range, in violation of the ADA and section 308.3.1 of the 2010 Standards whose remedy is readily achievable.

KK. In guest room #157, the lamp is not accessible, requires tight clasping to operate and the controls are out of the maximum reach range for a side or front approach, in violation of the ADA and section 308.3.1 of the 2010 Standards whose remedy is readily achievable.

LL. In guest room #157, the dresser drawer hardware is not accessible as they require tight grasping, pinching, or twisting of the wrist, in violation of the ADA section 309.4 of the 2010 Standards and 1991 ADAAG section: 4.27.4 whose remedy is readily achievable.

MM. In guest room #157, there is not sufficient maneuvering clearance to access all room amenities or to navigate the guest room, partly due to the placement of furniture, in violation of the ADA and section 304 of the 2010 Standards whose remedy is readily achievable.

<u>Guestrooms</u>

NN. The hotel's designated accessible guestrooms are not disbursed among the various classes of guestrooms, whereas the property offers guest rooms with meeting rooms and also executive suites with separate living area, parlor, whirlpool, sofa bed. These offers varying square footage and amenities available only to able bodied guests. However, guests who require accessible accommodations are restricted to fewer room classes and guestroom amenities, whereas able-bodied patrons and guests have access to reserve and stay at the full range of room classes. This is in violation of the ADA and its remedy is readily achievable.

OO. Upon information and belief, **The Dearborn Inn** has a legally insufficient total number of hotel guestrooms fitted with mobility accessible features. Whereas, for a property with 229 guestrooms such as this "Dearborn Inn", there must be a minimum of 7 mobility accessible guestrooms without a roll-in shower and a minimum of 3 of mobility accessible guestrooms with a roll-in shower, totaling 10 designated mobility accessible guestrooms.

PP. Upon information and belief, Mark Fultz believes substantially similar barriers to handicap access for the mobility impaired exist in all guestrooms that are designated as mobility accessible guestrooms throughout the hotel (not just room #157). Including the other roll-in shower fitted mobility accessible guestrooms and bathtub fitted mobility accessible guestrooms.

Policies and Procedures

QQ. The Defendants lack or have inadequate defined policies and procedures for the benefit and assistance of disabled patrons and guests, including a policy for maintaining its accessible features.

RR. The Defendant's inadequate procedures for the benefit of its patrons with disability extend to its failure to conduct a self-survey of its facilities and amenities that has resulted in discriminatory conduct toward Mark Fultz.

SS. The Defendant's inadequate policies and procedures include an absence of emergency evacuation plans of this four story, multi-building hotel for the Defendants' guests with varying types of disabilities who may require an added duty of care and pre-planning. As such, guests with mobility impairments including Mark Fultz, struggle to address the existing barriers to accessibility on the property and suffer additional risk in the event of an emergency and proper emergency evacuation plans are required.

15. The discriminatory violations described in Paragraph 14 by Defendants are not an exclusive list of the ADA violations at the place of public accommodation owned and operated by Defendants. Plaintiff requires further inspection of the Defendant's place of public accommodation in order to photograph and measure *all* of the discriminatory acts

violating the ADA and all of the barriers to access. The Plaintiff has been denied access to Defendants' accommodations; benefit of services; activities; and has otherwise been discriminated against and damaged by the Defendants, as set forth above. The individual Plaintiff Mark Fultz, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITES ACT

16. Plaintiff restates the allegations of ¶¶1-15 as if fully rewritten here.
17. The facility at issue, as owned by Ford Motor Company and Ford Motor Land Development Corporation is a public accommodation and service establishment, and as such, must be, but is not, in compliance with the Americans with Disabilities Act ("ADA") or Americans with Disabilities Act Accessibility Guidelines ("ADAAG").
18. Plaintiff was unlawfully denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of the property on the basis of disability due to Defendants' failure to comply with Title III of the Americans with Disabilities Act and its accompanying regulations, as prohibited by 42 U.S.C. § 12182, *et seq.* Defendants will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all physical barriers that exist at the facility, including those specifically set forth herein, and make the facility accessible to and usable by persons with disabilities, including Plaintiff.

19. The Plaintiff, and others similarly-situated, is presently without adequate remedy at law and is damaged by irreparable harm. Plaintiff reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the hotel, including those set forth herein.

20. Pursuant to 42 U.S.C. §12187, Plaintiff requests that the Court issue an injunction requiring Defendants to make such readily achievable alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages on its property to disabled persons. In connection with that relief, Plaintiff requests reasonable attorney's fees and costs of maintaining this action.

## COUNT II
## VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
## M.C.L. § 37.1301 *et seq*.

21. Plaintiff restates the allegations of ¶¶1-20 as if fully rewritten here.

22. The Defendants Ford Motor Company and Ford Motor Land Development Corporation's hotel is a "place[s] of public accommodation" pursuant to M.C.L §37.1301(a).

23. Defendants have committed an unlawful act pursuant to M.C.L §37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges. Whereas, and in particular, the Defendant has failed to create and provide an accessible guestroom with a compliant water closet and roll-in shower. This risks Mr. Fultz and others' safety. In addition, the Defendants have failed to maintain accessible features of their parking lot or create an accessible means for the registration check-in process.

24. Pursuant to M.C.L §37.1606, Plaintiff is entitled to compensatory and exemplary damages, attorney's fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendants to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

**WHEREFORE**, Plaintiff demands,

For **COUNT I**, an injunction requiring Defendants to make all readily achievable alterations and institute policies and procedures to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons, and the reasonable attorney's fees and costs of maintaining this action; and,

For **COUNT II**, compensatory and exemplary damages, attorney's fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendants to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons.

Respectfully Submitted,

*Counsel for Plaintiff:*

/s/ Owen B Dunn Jr.

Owen B. Dunn, Jr., Esq. (p66315)
Law Offices of Owen Dunn, Jr.
The Ottawa Hills Shopping Center
4334 W. Central Ave., Suite 222
Toledo, OH 43615
(419) 241-9661 – Phone
Monroe, MI (734) 240-0848
(419) 241-9737 - Facsimile
dunnlawoffice@sbcglobal.net